We'll take our final oral argument today now. If the council will come forward in 23-6061, Johnson v. Metropolitan Property. You may... Mr. Travis. Thank you, Your Honor. I'm Rex Travis. I represent a young man who was injured in a motorcycle accident, as I'm sure you know. We're going to talk today here about 36... 36-36E. It deals with the question of whether and under what circumstances can the insurance company exclude coverage of an injured... ...insured because they are occupying a vehicle owned by or regularly furnished for their use. Young Briar Johnson was insured with Metropolitan. Actually, Metropolitan Cash Casualty Company, as opposed to MetLife, who we're more familiar with. He was insured under a policy of his parents providing $250,000 uninsured mortgage coverage. He was riding his motorcycle, which was a small cycle that was at night reading. And he was hit by another car, flung off the cycle, and laid there for several minutes. And then was run over by another car, which didn't see him, in the darkness of the night. And drove to 150 feet and sustained a mortal injury. He claimed that he was entitled, as they would call it, Class II insured, a member of the family. He was hiding in the household. The uninsured mortgage coverage on the policy bought by his parents. He had bought his own coverage on the motorcycle with another company. They bought only liability coverage at $250,000 minimum over limits. The two mortgagors who hit him had paid each their $25,000. And what we have remaining is the question of whether he is entitled to the $250,000 bonus provided by the policy, which Metropolitan sold to his parents. And he was a member of the household. So can I ask you a question to make sure I understand the way the policies flow? The motorcycle policy, his own policy, he had liability coverage, but he had not elected for uninsured. That's correct. Okay, but his parents' policy, they had elected uninsured motorist coverage. That is correct. Okay. So he's insured on the parents' policy, and we claim he's entitled to that coverage. The case turns on a provision, an exclusionary provision in the Met policy, which says that we do not insure you while occupying another vehicle which you own, which is rarely furnished for your use. And then it says, provided that the vehicle is covered by an automobile policy, automobile liability policy. That doesn't say liability, does it? I'm sorry? It doesn't say liability, does it? It doesn't. Correct. And he had not that coverage with DICO. The statute says that he has to have, in order to be covered, while occupying that vehicle that he owns, which does not have coverage on it, he has to buy automobile liability coverage. He has done that. Well, it says a motor vehicle insurance policy. Yes, sir. It didn't say liability insurance policy. Liability insurance policy, yes. A motor vehicle insurance policy. Yes, sir. It doesn't talk about liability or UM. That's correct. It does not mention UM, and that becomes very important in this case. Can I just ask you this? Okay. Is there a rule as far as how we interpret this language? Is it read in favor of one party or the other if it's ambiguous? Because it is an exclusionary clause, and I'm briefing you on this case, because it is an exclusionary clause, it is to be interpreted in favor of the insured and against the insured company. That's the rule. I don't know. So we have at the very beginning of the case the problem, does that policy that purports to exclude coverage when the vehicle is not insured for UM but is insured for liability purposes? Does that fill the bill, and can they exclude it? We contend they cannot. However, there was a concern when the case first started in federal court. It was approved and removed in federal court. The question was whether and what was the effect of that interpretation of policy. We contend that unless he said, the exclusionary said, he would not be covered. If the policy was not insured for UM, I think the company is arguably in good shape. But if they say liability insurance, then a liability policy such as UM had, should be enough. And we can end there. We simply say the exclusion does not appear. You may then get into the question of what does the court say about those kinds of exclusions, and what's the meaning of that? And when it first started, there was a question about that. So I did not sue for bad faith. I don't think that's good. There's been too many suits for bad faith. Anytime you have misdemeanor coverage, because in Oklahoma, as in most states, the insurance company can defend a claim if they have an arguable defense. And we thought, under the circumstances that they were, that was the case. Well, the case was pending, and it was pending for a long time, just because of the peculiarity of the dockets in Oklahoma. So when you have Indian tribes there, that the courts there were just overwhelmed with Indian cases, and the question of whether they should be tried in federal court or federal court. And this judge had to spend a lot of time dealing with those cases. No fault of his own, but just that's the way the docket worked out. And my case was pending. We found a decision out of the Oklahoma Supreme Court, and this is how it responds. It's Coates versus Congress, and it's decided in both hearings. And Coates says that they have to be without U.N. coverage as opposed to the question, well, what are you going to do? It's a liability policy, but no U.N., see? And Coates should follow that question. So we called that to attention in the district court, with a suggestion of additional authority, and a mediation, in fact. And they simply, the insurance company introduced a fire, and they said no. They don't think that's good enough. We're not going to consider settlement negotiations. We're not going to consider settlement negotiations. You're not suggesting we should consider that? No, no, no. So that was brought to our attention. We called the case to the attention of the district court, and they took this position as we were filing it with the court, that Coates did not resolve these issues. So we filed an application for leave to amend the complaint. You see that it has damages. That's why that becomes important. The court denied that and ruled against us on all issues, saying that, well, that doesn't make much of a difference. The court will be a liability insurance policy, or a union policy, as the statute requires, and that's going to be the same result. So with that, I will turn it over to my colleague. Thank you. Thank you. Good morning. May it please the court. My name is Michael Woodson. I'm here on behalf of Metropolitan Property and Casualty Company. This human coverage dispute was submitted to the district court on stipulated facts. We believe the critical ones are that Briar Johnson owned a motor vehicle. He was operating that motor vehicle at the time of the accident. He insured it with Geico, was presented the statutorily mandated opportunity to purchase uninsured motorist coverage, and he declined that invitation in writing. At the time of the accident, Mr. Johnson was a resident in his parents' household. His parents had purchased their own auto policy covering three separate vehicles, not the vehicle involved in the accident, which contained an exclusion that said we do not cover a relative who owns a motor vehicle if such motor vehicle is not insured by a motor vehicle insurance policy. That's the exclusion that was invoked to deny the claim. That's the exclusion that the district court upheld. Can I have you pause there? The language that you read there from the policy tracks the statute, same language. And if that's all we have, we didn't have any Oklahoma court decisions or anything else, and we just had that language, if such motor vehicle is not insured by a motor vehicle insurance policy, doesn't the plain text of that say you lose? Because there was a motor vehicle insurance policy. One, the Supreme Court has addressed that, and I'll come back to that. My question is, we'll get to those cases, but if it were just that language and that language alone and we're all textualists and we say, what's this language mean? We would say there was a motor vehicle insurance policy, would we not? We would, but there are two statutorily mandated components to a motor vehicle insurance policy under Oklahoma's statutory scheme, and it's not just liability. The second mandatory component is UM. The legislature has just given you the opportunity as an insurer to make an informed written rejection of that required component. The mandatory part is it has to be offered. Correct. Yes, it does not have to be accepted, but it does have to be offered in an Oklahoma motor vehicle insurance policy. And someone reading that policy, like the plaintiff here, would understand that? Yes, I believe anybody who went through the process of purchasing insurance coverage. Would understand the language in the policy? I would understand that the need to purchase an automobile insurance policy means that he had to get both liability and UM coverage. Do you really think that that's what any reasonable person who bought an auto insurance policy would read the exclusion that way? I do. I do think that is exactly the process. You said there's statutorily mandated language. There's a statutorily mandated experience that an auto owner has to go through in Oklahoma. You have to purchase compulsory automobile liability insurance policy, and you have to be offered in specific amounts, knowing the cost, knowing what the coverages are, uninsured motorist coverage, and you have to knowingly reject that in writing. So, yes, I don't think that is a leap for an Oklahoma insurance consumer. But it could have been written more clearly for what you're saying. In other words, it could have said, if such motor vehicle is not insured by a motor vehicle insurance policy, that includes uninsured motorist. I guess there are two mandatory components. There are multiple potential components under motor vehicle policy. I guess it could have referenced more of those components. If it had said that, everybody would understand it, but not saying that you have to make an inference that isn't supported by the text, it seems to me. I think that goes back to the nature of this exclusion, which this particular exclusion is not one where an insurance company drafted it. This particular exclusion is an exclusion that comes to us from the Oklahoma legislature. So in the policy, does it reference the Oklahoma statute? Does it say, pursuant to Oklahoma statute 3636E, we do not cover you or a relative who owns lease, blah, blah, blah? I apologize, Mr. President. I don't remember specifically the text. I would be shocked if there was a reference to a statutory section. Yeah, because a person – it seems to me like a person – I mean, this isn't a statutory cause of action we're dealing with here either. I mean, this is a breach of contract case, right? Correct. So, I mean, the contract spells out what goes on between the party and Oklahoma has specific laws for determining how to interpret insurance contracts. I mean, this may be a legal requirement for insurance companies in Oklahoma if they want to exclude – make certain exclusions, but as far as Mr. Travis's client and yours, I mean, the document sets forth the party's rights and obligations. Correct. Okay. So in the document, if it does not have statutory references, I mean, how is the purchaser or someone who's covered by this policy supposed to know that they need to go reference a separate statutory provision to determine that, oh, this also – the word motor vehicle insurance policy also – it's two components. It's liability and uninsured motorist. And again, I don't want to get stuck on semantics. The exclusion does not contain a citation to the statute.  So I think the policyholder is being told exactly what the exclusion does. They place it in the uninsured motorist section of the policy. They place it specifically in the exclusion section of the uninsured motorist policy. Yeah, I mean, I just don't know how someone obtaining car insurance is supposed to know that that's referencing a statute or some kind of Oklahoma law. Well, I don't think they would know the citation, but they are actually being told exactly what the exclusion is, and the exclusion is the mere language that is in the legislatively enacted exclusion. And I guess on that issue, this would be the point where I would phone a friend in the Oklahoma Supreme Court who specifically addressed that notion. They've addressed this section four times since it was enacted in 2004. They have never found it impermissibly vague or ambiguous. They specifically made the comment in Coase, quote, the plain language of the statute, a motor vehicle insurance policy, means what it says. It may include either or both liability or human coverage. It may include. Okay, go ahead. I don't want to jump out in front of you there. I don't understand why you think that helps you. It seems like that hurts in that it is distinguishing motor vehicle insurance policy into parts. And so it's saying if you just have a liability policy, you got it. You're covered. If you've just got UM somehow, you're covered. And he did have a liability policy. So that language from Coase seems to cut against you, unless you can help me understand why not. Well, where I think it's helpful to the position we're advocating is that it recognizes what motor vehicle insurance is in Oklahoma and says it's clear, and it's liability in UM. Or either of them. Yeah, it could be. If you reject UM, it's going to be either or, but that's the insurer's decision, which I think is critical to the remainder of the analysis. But I think that's where the court's comment in Coase was on where that particular language was at issue. That's why I think that comment is telling and was significant with the district court in this case. Well, and just one quick follow-up, and that is, that language, does it say that if you have a general liability policy, you also have a motor vehicle insurance policy? It says either of them. So I assume the answer is yes. I apologize. Judge Phil's ready to follow the question. I'm a little lost on the reference to a general liability policy. Well, okay. The sentence says that, first of all, the plain language of the statute, a motor vehicle insurance policy, means what it says. So the court's emphatic. It may include either or both liability and UM coverage. So the court is saying you can have a motor vehicle insurance policy, the operative language from the statute that we care about, you can have that covered or met if you have an insurance policy that is liability or UM. And if a liability policy without UM qualifies for that term, and we pick it up and we put it over in the statute, then the plaintiff met the condition. And then if you follow the Coates and the Morris reasoning on through, it was significant that they had rejected UM policy on the vehicle, but it did not become outcome determinative because they had purchased UM coverage under other motor vehicle policies in which they were an insurer. Is Connor problematic for you? To the extent it's a Court of Appeals case, I wish it was a Supreme Court case, but no. Connor, I think, is factually directly on point with our case here. He had the opportunity to purchase uninsured motorist coverage on the vehicle he was in. He declined the opportunity to do that, and hence the exclusion did not offend, was valid and didn't offend public policy under that circumstance. But he had a different exclusion. He had a more specific exclusion, didn't he? He did. When his was we do not provide uninsured motorist coverage for bodily injury sustained by any insured who is a family member while occupying or when struck by any motor vehicle owned by that person, which is not insured for uninsured motorist coverage. Now that text is clear. That text is clearer. This is when we always argue ambiguities in insurance contracts, it becomes an argument of floors and ceilings. You can get as close to the ceiling as you want to, but you can't go below the floor. The floor here is the language that came to us from the Oklahoma legislature when they found this particular exclusion was valid under Oklahoma's U.N. statute. That particular subdivision that you quote is in a section of statutes directed specifically at uninsured motorist protection, is it not? Correct. It is in 3636. If this were a matter of interpreting the contract in general, I think you'd make some good arguments, but that's not how we interpret insurance contracts, and I think you've got a problem there. Obviously my colleagues have questions about that too. It would be real easy for you to form the contract to state what Judge Carson was just saying, specifically say uninsured motorist, because I don't see why you would care. Excuse me. If the fellow had liability insurance, that doesn't help you at all. I would think you could easily cure this problem for future cases. That's our concern. Certainly, and the argument that I would advocate to the court in addressing that concern is that this is a scenario in which there is a floor. This is the language, the exclusionary language, that the legislature put in there, that Metropolitan Life took and put in there as well. That's fine to use their language. The question is how the insured would read that language. Certainly. They could have listed every potential coverage, mandatory, not mandatory. They could have done that. The argument would have been that made the language more confusing. Aren't you really just interested in whether they had uninsured motorist? Isn't that really, you really don't care whether this relative in the household carried liability insurance, do you? That wouldn't affect your rationale for providing uninsured motorist. We are clearly dealing with a legislatively enacted U.M. exclusion that is placed in Metropolitan's uninsured motorist policy in the exclusion section. You're direct on that. This is a U.M. exclusion. Has anyone, any court except, aside from Judge Dishman, accepted your position with this precise contract language? I am not aware of any of the other three post-2004 cases that have addressed it that have identical policy language. So I think by implication the answer would have to be no. Because Coates as well references U.M. coverage. Yes, it uses the term uninsured motorist. So briefly, there are a lot of factual scenarios that the court recognizes in Coates. You have to address under U.M. and they have carved out a section where if under this exclusion the injured insured has purchased U.M. coverage when it was offered to them, applying an exclusion to them would violate public policy. That's not our case here. He had the opportunity to avail himself of this statutory mandate and coverage and decline the invitation. That's where we believe Judge Dishman reached the correct result and it's consistent with Connor. Connor wasn't overruled in Morris or Coates. Connor was distinguished in Morris and Coates by the fact that he accepted the invitation to buy U.M. coverage when it was offered. Unless there are additional questions, I think that is all I have. Thank you. Judge Phillips was reading my exact paragraphs of the case that we think is going to be ruled, which is the Coates v. Progressive case. I think if you go to paragraphs 10 through 14, I thought it was purely delineated in the Oakland Supreme Court report, you will find that this case and Coates is absolutely controlled. There's an interesting argument below, and they didn't repeat so far as I knew. I couldn't hear everything the opposing counsel was saying. I've had a stroke and I have a hearing loss and speech impairment as a result of it. But the Connor case was a case that the insurance company relied on until the Coates case came down. And Connor says that in the Morris case, the two cases that were sort of appealed cases decided before this Coates case, they made very clear this. And in fact, the versions of the conclusions they tried to use were very specific in those cases. And you can see that from the reading of them. But there are those with an interesting one that said, well, this guy, you know, Barr Johnson had not paid himself for uninsured Morris coverage. And, you know, there are other cases here, including another very new Oakland Supreme Court case, Lane v. Clark, Tennessee, which says Jesus doesn't make any difference who pays the premium. That was a case where two young women were horribly injured because a car driven by their high school classmate turned over and rolled. And in paragraph 19 of that case, the Lane case, they said this premium was paid by the father of the girl who was at fault and drove her. And they said as long as that coverage had been bought and paid for, that's all that counts. I think that's a decision that you should come to. Thank you. Thank you, Counsel. Case submitted. Counselor excused. Her will be in recess until 8.30 tomorrow morning. A new and improved panel. Yes. Hopefully a well-rested one. Yes. All right, that's where we want it. We'll be back here at 8.30 tomorrow morning. It's a long walk. I keep saying 8.00. Thank you.